# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAMALA LEADBETTER DEAN,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No. 1:22-cv-01367-SAB<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DIRECTING THE CLERK OF THE COURT TO ENTER JUDGMENT IN FAVOR OF PLAINTIFF PAMALA LEADBETTER DEAN; REMANDING THIS MATTER TO THE COMMISSIONER OF SOCIAL SECURITY FOR FURTHER PROCEEDINGS; AND DIRECTING CLERK OF COURT TO CLOSE THIS MATTER<br><br>(ECF Nos. 14, 14, 16) |

**I.**

**INTRODUCTION**

Pamala Leadbetter Dean ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff requests the decision of Commissioner be vacated and this case be remanded for further

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been assigned to Magistrate Judge Stanley A. Boone for all purposes. (See ECF Nos. 5, 10.)

1

proceedings arguing the Administrative Law Judge erred by failing to consider whether there should be a closed period of disability and that the residual functional capacity assessment for medium work is not supported by substantial evidence.

For the reasons explained herein, Plaintiff's motion for summary judgment shall be granted.

## II.

## BACKGROUND

### A. Procedural History

Plaintiff protectively filed a Title XVI application for supplemental security income on May 20, 2019. (AR 62.) Plaintiff's application was initially denied on July 30, 2019, and denied upon reconsideration on December 19, 2019. (AR 73-77, 83-87.) Plaintiff requested and received a hearing before Administrative Law Judge Henry Koltys ("the ALJ"). Plaintiff appeared with her attorney for a telephonic hearing on March 9, 2021. (AR 28-51.) On June 11, 2021, the ALJ issued a decision finding that Plaintiff was not disabled. (AR 13-23.) On August 24, 2022, the Appeals Council denied Plaintiff's request for review. (AR 1-3.)

### B. The ALJ's Findings of Fact and Conclusions of Law

The ALJ made the following findings of fact and conclusions of law as of the date of the decision, June 11, 2021:

1. Plaintiff has not engaged in substantial gainful activity since May 20, 2019, the application date.
2. Plaintiff has a severe impairment of osteoarthritis.
3. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.
4. After careful consideration of the entire record, Plaintiff has the residual functional capacity to perform the full range of medium work as defined in 20 CFR § 416.967(c).
5. Plaintiff has no past relevant work.
6. Plaintiff was born on January 7, 1966, and was 53 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed. Plaintiff subsequently changed age category to advanced age.

7. Plaintiff has at least a high school education.

8. Transferability of job skills is not an issue because Plaintiff does not have past relevant work.

9. Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform.

10. Plaintiff has not been under a disability, as defined in the Social Security Act, since May 20, 2019, the date the application was filed.

(AR 18-22.)

## III.

## LEGAL STANDARD

### A.   The Disability Standard

To qualify for disability insurance benefits under the Social Security Act, a claimant must show she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[2] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520;[3] Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

[3] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, while Plaintiff seeks only Social Security benefits under Title XVI in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes these cases and regulations are applicable to the instant matter.

> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006). The burden of proof is on the claimant at steps one through four. Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020). A claimant establishes a *prima facie* case of qualifying disability once she has carried the burden of proof from step one through step four.

### B.   Standard of Review

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision. See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Further, the Court's review of the Commissioner's decision is a limited one; the Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart (Thomas), 278 F.3d 947, 954 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)); see also Dickinson v. Zurko, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard). "[T]he threshold for such evidentiary sufficiency is not high." Biestek, 139 S. Ct. at 1154. Rather, "[s]ubstantial evidence means more than a scintilla, but less than a preponderance; it is an extremely deferential standard." Thomas v. CalPortland Co. (CalPortland), 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). Even if the ALJ has erred, the Court may not reverse

the ALJ's decision where the error is harmless. Stout, 454 F.3d at 1055–56. Moreover, the burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

Finally, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). Nor may the Court affirm the ALJ on a ground upon which he did not rely; rather, the Court may review only the reasons stated by the ALJ in his decision. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003). Nonetheless, it is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Ford, 950 F.3d at 1154 (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).

## IV.

## DISCUSSION AND ANALYSIS

Plaintiff argues that the ALJ recognized that she had severe osteoarthritis and necrosis of the femoral head leading to a right hip replacement in January 2020. (Motion for Summary Judgment ("Mot.") 6, ECF No. 14.) Plaintiff asserts the question here is "whether a limitation to a narrow range of sedentary work is consistent with and supported by severe osteoarthritis of the right hip with probable superimposed chronic osteonecrosis of the superior right femoral head." (Mot. 6.) Plaintiff argues that the ALJ's reasons for rejecting the opinion of her treating physician do not have substantial support in the record. Plaintiff had a severe hip impairment which required hip replacement surgery, and prolonged therapy until January 2021. (Mot. 6.) Plaintiff also argues that assuming she recovered completely from her hip replacement surgery, the ALJ must treat the earlier period separately. (Mot. 6.) Plaintiff contends that the period from April 2019 until she recovered from the surgery would meet the 12-month durational requirement. (Mot. 6.) Plaintiff argues that this error is material, and the matter should be reversed and remanded for consideration of whether she can meet the walking and standing demands of medium work. (Mot. 7.)

Plaintiff contends there is no basis for the ALJ's opinion that she can meet the demands of medium work because there is no medical opinion in the record finding that an individual who has undergone hip replacement surgery can do so on a sustained basis. (Mot. 8.) Plaintiff argues that whether an individual with her surgical history "can or medically should engage in that rigorous activity is a medical question, not a question for the ALJ to resolve without medical evidence[,]" citing Social Security Ruling 83-10, Social Security Ruling 83-12. (Mot. 9) Plaintiff seeks remand for further proceedings. (Mot. 10.)

Defendant responds that the burden at all times is on the claimant to prove disability, and despite being informed that she needed to provide additional evidence to support her claim, Plaintiff did not do so. (Def.'s Responsive Brief ("Opp.") 5, 7, ECF No. 16.) Defendant contends that, despite the fact that she had hip replacement surgery, as the ALJ noted, the records demonstrate that she was showing improvement by March 2020, and her post op visit in April 2020 reveals minimal pain and that she was doing well. (Opp. 8.) Defendant also asserts that Plaintiff testified at the hearing that her hip surgery was successful. (Opp. 8.) Further, Defendant contends that the ALJ accurately recorded that Dr. Wu only found a slight abductor lurch on the right side in July 2020 and otherwise findings were normal. (Opp. 8-9.) Defendant also asserts that other records during this time period record normal findings and, while Plaintiff claims that she continued to have physical therapy until January 2021, the record only records two physical therapy visits in July 2020 and no further visits until January 2021. (Opp. 9.) Defendant contends that because the record demonstrates that Plaintiff improved shortly after her hip replacement surgery, she is not entitled to a closed period of disability. (Opp. 9.)

Defendant also responds that Plaintiff ignores that it is not the court's "role to speculate whether a person that has undergone a total hip replacement' could "engage in the prolonged standing and walking of medium (or light) [work] on a sustained basis[.]" (Opp. 10.) Defendant argues that Plaintiff ignores that it was her burden to prove that she could not perform her RFC and the RFC is an administrative not a medical finding. (Opp. 10.) Defendant contends that while Plaintiff argues that there is no medical opinion stating that she could perform medium or light work, no physician opined that Plaintiff was disabled or unable to work. (Opp. 10.) Defendant argues that

Plaintiff has not articulated why she is unable to perform the RFC but is seeking to have this court determine that she cannot perform medium work based solely on the fact that she had hip replacement surgery and did physical therapy. (Opp. 12.) Defendant asserts that the ALJ properly evaluated the totality of the evidence and correctly determined that Plaintiff was capable of performing medium work. (Opp. 13.) Defendant contends that Plaintiff has not identified any objective medical evidence or made any meaningful argument as to why she would be unable to perform medium work. (Opp. 13.) Defendant requests that Plaintiff's arguments be rejected, and this matter be affirmed. (Opp. 13-14.)

Plaintiff replies that Defendant recognizes that Plaintiff started being weaned off medication in May 2020 and concedes that she still had an abductor lurch. (Pl.'s Reply ("Reply") 3, ECF No. 17.) Plaintiff contends that Defendant is arguing that a person taking narcotic medication and having an observable gait abnormality has recovered and no physician rendered such an opinion. (Reply 3.) Plaintiff argues that medical evidence is required to support the RFC and medical opinion is required to show that Plaintiff is able to perform medium work. (Reply 4.) Plaintiff argues that she was not medically cleared until January 2021, fully 18 months "after stopping working."[4] (AR 6.) Plaintiff asserts that, because there was no medical basis for the RFC, the ALJ erred, and this action must be remanded. (Reply 7.)

**A.    Whether the ALJ Properly Considered Dr. Hansen's Medical Source Statement**

Plaintiff argues the question here is "whether a limitation to a narrow range of sedentary work is consistent with and supported by severe osteoarthritis of the right hip with probable superimposed chronic osteonecrosis of the superior right femoral head." (Mot. 6.) Plaintiff also asks, "Should a person that has undergone a total hip replacement engage in the prolonged standing and walking of medium (or light) on a sustained basis?" (Mot. 9.) The Court agrees with Defendant's response that it is not this Court's role to speculate on whether a person with Plaintiff's medical findings could perform a specific type of work. The question here, is whether the ALJ

---

[4] The Court notes that, as the ALJ found, evidence in the record supports the finding that Plaintiff had not worked in the 10 years prior to filing her application for benefits. (AR 5, 34.) Further, evidence shows that her failure to work was not related to her hip impairment, but because she was helping her partner with paperwork in his business, and he paid all her bills. (AR 34.)

properly evaluated the medical evidence and if his opinion has substantial support in the record.

Initially, the Court considers Plaintiff's argument that the ALJ's reasons for rejecting Dr. Hansen's do not have substantial support in the record. (Mot. 6.)

1. <u>Legal Standard</u>

Where, as here, a claim is filed after March 27, 2017, the revised Social Security Administration regulations apply to the ALJ's consideration of the medical evidence. <u>See</u> Revisions to Rules Regarding the Evaluation of Medical Evidence (Revisions), 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5844 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. Under the updated regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Thus, the new regulations require an ALJ to apply the same factors to all medical sources when considering medical opinions, and no longer mandate particularized procedures that the ALJ must follow in considering opinions from treating sources. <u>See</u> 20 C.F.R. § 404.1520c(b) (the ALJ "is not required to articulate how [he] considered each medical opinion or prior administrative medical finding from one medical source individually."); <u>Trevizo v. Berryhill</u>, 871 F.3d 664, 675 (9th Cir. 2017). As recently acknowledged by the Ninth Circuit, this means the 2017 revised Social Security regulations abrogate prior precedents requiring an ALJ to provide "clear and convincing reasons" to reject the opinion of a treating physician where uncontradicted by other evidence, or otherwise to provide "specific and legitimate reasons supported by substantial evidence in the record," where contradictory evidence is present. <u>Woods v. Kijakazi</u>, 32 F.4th 785, 788–92 (9th Cir. 2022).

Instead, "[w]hen a medical source provides one or more medical opinions or prior administrative medical findings, [the ALJ] will consider those medical opinions or prior administrative medical findings from that medical source together using" the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; [and] (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(a), (c)(1)–(5). The most important factors to be applied in evaluating the persuasiveness of medical opinions and prior administrative medical findings are supportability and

consistency. Woods, 32 F.4th at 791 (citing 20 C.F.R. §§ 404.1520c(a), (b)(2)). Regarding the supportability factor, the regulation provides that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions … will be." 20 C.F.R. § 404.1520c(c)(1). Regarding the consistency factor, the "more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) … will be." 20 C.F.R. § 404.1520c(c)(2).

Accordingly, the ALJ must explain in his decision how persuasive he finds a medical opinion and/or a prior administrative medical finding based on these two factors. 20 C.F.R. § 404.1520c(b)(2). The ALJ "may, but [is] not required to, explain how [she] considered the [other remaining factors]," except when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. §§ 404.1520c(b)(2)–(3). Further, the ALJ is "not required to articulate how [she] considered evidence from nonmedical sources." 20 C.F.R. § 404.1520c(d). Nonetheless, even under the new regulatory framework, the Court still must determine whether the ALJ adequately explained how he considered the supportability and consistency factors relative to medical opinions and whether the reasons were free from legal error and supported by substantial evidence. See Martinez V. v. Saul, No. CV 20-5675-KS, 2021 WL 1947238, at *3 (C.D. Cal. May 14, 2021).

2. Discussion

The ALJ considered the three medical opinions in the record. First, he addressed the opinions of the agency medical consultants.

> In July 2019, the state agency medical consultant did not diagnose any severe impairment due to a lack of medical evidence in the record (Exhibit 1A). In December 2019, the state agency medical consultant diagnosed right hip osteoarthritis, but did not find any functional limitations due to a lack of medical evidence (Exhibit 3A). The State agency physicians' opinions are less persuasive because new evidence has been admitted into the record since the State agency physicians rendered their opinions, which obviously diminishes the value of those opinions. Furthermore, they did not have the benefit of considering additional evidence that was available after their assessments, including the hearing testimony from the claimant.

(AR 21.) Next, the opinion of Dr. Hansen, Plaintiff's treating physician, was considered.

> In September 2019, Dr. Orin Hansen completed a medical source statement form. He diagnosed right hip degenerative joint disease and stated that the claimant needed a right hip replacement. He checked answers indicating that the claimant could perform sedentary work. He stated that the claimant could not perform a job that required standing for prolonged period and she needed an assistive device for standing and walking (Exhibit 2F). His opinion is less persuasive. There is no significant narrative discussion of objective findings on this form that would support the assessed limitations. Furthermore, the claimant went on to have a successful right hip replacement with no complications, as demonstrated by her January 2021 physical examination.

(AR 21.)

On September 25, 2019, Dr. Hansen completed a medical source statement for Plaintiff. (AR 259-64.[5]) Dr. Hansen first treated Plaintiff on May 6, 2019, and last saw Plaintiff on July 8, 2019. (AR 259.) Plaintiff was diagnosed with right hip degenerative joint disease (severe) and needed a hip replacement. (AR 259.) Her impairment was expected to last at least twelve months. (AR 259.) Plaintiff had severe right hip pain with difficulty walking. (AR 259.) She had musculoskeletal aching pain in the right hip that ranged from 5 to 10 on a scale of 0-10. (AR 259.) She was not able to be completely relieved of pain with medication. (AR 259.) Her level of fatigue ranged from 5 to 7. (AR 259.) Dr. Hansen opined that Plaintiff could sit for 6 hours in an 8-hour day and stand or walk for 0 to 2 hours in an 8-hour day. (AR 260.) Plaintiff was not medically precluded from sitting continuously in a work setting. (AR 260.) Plaintiff could occasionally lift and carry less than 10 pounds, rarely lift and carry 10 to 20 pounds, and never lift and carry 50 pounds or more. (AR 260.) Plaintiff was unable to do a fulltime competitive job that requires that activity on a sustained basis. (AR 261.) Plaintiff could never climb ramps, stairs, or ladders; balance; stoop; kneel; crouch; or crawl. (AR 261.) Plaintiff was not prescribed any medication. (AR 261.) Plaintiff was not a malingerer. (AR 261.) Plaintiff was capable of low stress work. (AR 261.) The basis of these conclusions was severe right hip osteoarthritis, inability to walk without a device or work a job that required standing. (AR 262.) Plaintiff would be absent from work an average of more than three times per month due to her impairments or treatment. (AR 262.) These limitations applied starting April 29, 2019. (AR 262.) Plaintiff required a cane or walker for standing and walking. (AR 264.) She required the use of an assistive device as of April 29, 2019, and likely earlier, but records were

---

[5] The Court notes that although the record is voluminous, it is largely multiple copies of the same records.

limited. (AR 264.)

The regulations provide that the most important factors to be applied in evaluating the persuasiveness of medical opinions and prior administrative medical findings are supportability and consistency. Woods, 32 F.4th at 791 (citing 20 C.F.R. §§ 404.1520c(a), (b)(2)). While the ALJ found that there were "no significant narrative discussion of objective findings on this form that would support the assessed limitations," he did not address the records of Plaintiff's medical visits with Dr. Hansen which provide support for the opinion. 20 C.F.R. § 404.1520c(c)(1). An ALJ errs when he fails to recognize that the check form is supported by the medical provider's treatment notes. Garrison v. Colvin, 759 F.3d 995, 1013 (9th Cir. 2014)

Here, there are some findings in the record that would not support Dr. Hansen's opinion. Plaintiff was seen on May 8, 2019, expressing an interest in hip replacement surgery, but was able to ambulate with a walker, and on examination, had normal upper extremity peripheral pulse and capillary refill with no edema in the lower extremities. (AR 286, 287.) She returned on May 15, 2019, and examination noted she was moving all extremities voluntarily. (AR 307.) A note was provided to the family endorsing Plaintiff's ability to ambulate independently and perform her activities of daily living. (AR 309.)

Dr. Hansen's treatment notes also support the opinion. Plaintiff returned on July 8, 2019, (AR 374), and the record notes her hip seems to be getting worse with conservative therapy. (AR 378.) She is having symptoms of aching pain in the right hip, limited range of motion and difficulty ambulating that are moderately distressful. (AR 378.) She has not seen a specialist, and a recent x-ray showed severe degenerative disc disease with subluxation. (AR 378.) The record does not that she "seems to be doing okay with respect to this issue." (AR 378.) Plaintiff is noted to be ambulating slowly, with a limp, and with the assistance of a cane. (AR 382.) Examination of the extremities shows that she is moving all extremities voluntarily. (AR 382.) Plaintiff has severe osteoarthritis of the right hip with partial collapse of the femoral head and superior subluxation of the femur relative to the acetabulum. (AR 383.) Degenerative changes and the partial collapse of the femoral head appear to be mildly progressed compared to the prior exam. (AR 383.) The record also notes that Plaintiff is unlikely to benefit from physical therapy due to the severity of her disease. (AR

384.)  She was to be referred to an orthopedic surgeon for evaluation.  (AR 384.)

Further, there is evidence in the record that is consistent with Dr. Hansen's opinion.  20 C.F.R. § 404.1520c(c)(2).  On April 29, 2019, an x-ray of the right hip showed severe osteoarthritis of the right hip with superimposed osteonecrosis of the superior femoral head.  (AR 273.)  The record notes that her x-ray shows severe degenerative changes of the hip, and she is likely to be considered for a hip replacement.  (AR 278.)  On May 8, 2019, Plaintiff was seen continuing to complain of hip pain, and expressed an interest in referral for hip replacement.  (AR 286.)

Plaintiff was seen in urgent care on June 27, 2019, complaining of chronic right hip pain for which she uses a cane to ambulate and had not been able to sleep for four days due to the pain.  (AR 355.)  Examination of the extremities notes that she moves all four spontaneously.  Right hip with pinpoint "ttp" over the S1 joint.  (AR 355.)  She had difficulty with active and passive flexion of the hip due to pain and painful passive internal and external rotation of the hip.  (AR 355.)   Plaintiff had an x-ray of her right hip which showed severe osteoarthritis of the right hip with a partial collapse of the femoral head mildly progressed when compared with prior exam.  (AR 508.)  The physician recommended referral and evaluation by an orthopedic surgeon and prescribed lidocaine patches.  (AR 357.)  The record notes that on physical examination she has difficulty with both passive and active range of motion.  (AR 502.)  Otherwise, she has no systemic symptoms and does not complain of any new weakness.  (AR 502.)

The case was discussed with Plaintiff's physician who believed Plaintiff had severe degenerative joint disease with flattening of the femoral head and proximal migration due to symmetric acetabular wear.  (AR 357.)  It was recommended that Plaintiff receive Toradol and NSAIDS and be referred for evaluation for a hip replacement.  (AR 357.)  Plaintiff may have some AVN with collapse and an assistive device for gait training and offloading was recommended.  (AR 357.)

On August 5, 2019, Plaintiff received an orthopedic consultation.  (AR 385.)  The record notes that the June 27 x-ray of the right hip shows severe degenerative disk disease with bone loss from superior femoral head and lateral subluxation such that the center edge angle is about zero.  (AR 385.)  The physician found that Plaintiff would likely benefit from a total hip arthroplasty,

however, to minimize complications, he wanted her to quit smoking and find stable housing. (AR 386.) A follow-up was scheduled in two months to allow her to be off cigarettes for a least a month to demonstrate her ability to maintain cessation of smoking. (AR 386.)

Plaintiff was seen on August 7, 2019, complaining of worsening hip pain, and requesting a Toradol injection. (AR 401.) She reported the pain was not relieved by Tylenol. (AR 401.) Examination of the extremities notes Right hip "ttp" with flexion/extension. No erythema or swelling. (AR 402.) She was given a Toradol injection and prescription for Naproxen. (AR 403.)

On October 4, 2019, Plaintiff had a follow-up with the orthopedist. (AR 408.) It is noted that a hip replacement is reasonable at this point, risks were discussed, and Plaintiff indicated she would like to proceed. (AR 412.) An x-ray of the pelvis and hip showed no significant interval change to the previously noted severe osteoarthritis of the right hip with partial collapse of the femoral head and superior subluxation of the femur relative to the acetabulum. (AR 413.)

Plaintiff was seen on November 20, 2019, for pre op clearance. She reported her hip pain was 7 on the numeric scale. (AR 551.) Plaintiff was medically cleared for surgery. (AR 553.)

On December 24, 2019, Plaintiff appeared for a pre op appointment. (AR 486.) On examination her right hip was found to have minimal passive range of motion. (AR 486.)

On January 15, 2020, Plaintiff had an updated pre op visit. (AR 625.) Her hip surgery had been rescheduled due to a urinary tract infection. (AR 625.) Examination of the right hip shows minimal passive range of motion. (AR 625.)

On January 28, 2020, Plaintiff had a successful arthroplasty hip total replacement (right). (AR 672-779.)

The ALJ did not adequately explain how he considered the supportability and consistency factors relative to Dr. Hansen's medical opinion. Further, this error is not harmless, because as the only medical opinion in the record, it is inconsistent with an RFC of medium work.

**B.    Whether the ALJ Erred in Determining Plaintiff's RFC**

Plaintiff argues that the RFC for medium work does not have substantial support in the record as no physician opined that Plaintiff was capable of medium work post-surgery. (Mot. 8-9.) Defendant counters that no such medical opinion is necessary, the ALJ did not rely on his lay

13

interpretation of the evidence, and there is substantial support in the medical record for the ALJ's determination that Plaintiff can perform medium work. (Opp. 10-13.)

### 1. Residual functional capacity

Before making the step four determination, the ALJ first must determine the claimant's RFC. 20 C.F.R. § 416.920(e); Nowden v. Berryhill, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e); 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, available at 1996 WL 374184 (Jul. 2, 1996).[6] The RFC is "based on all the relevant evidence in [the] case record." 20 C.F.R. § 416.945(a)(1). "The ALJ must consider a claimant's physical and mental abilities, § 416.920(b) and (c), as well as the total limiting effects caused by medically determinable impairments and the claimant's subjective experiences of pain, § 416.920(e)." Garrison, 759 F.3d at 1011. A determination of RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. See 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion); 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).

At step four the RFC is used to determine if a claimant can do past relevant work and at step five to determine if a claimant can adjust to other work. Garrison, 759 F.3d at 1011. "In order for the testimony of a VE to be considered reliable, the hypothetical posed must include 'all of the claimant's functional limitations, both physical and mental' supported by the record." Thomas, 278 F.3d at 956.

When applying for disability benefits, the claimant has the duty to prove that she is disabled. 42 U.S.C. § 423(c)(5)(A). The ALJ has an independent "duty to fully and fairly develop the record

---

[6] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

14

and to assure that the claimant's interests are considered." Widmark v. Barnhart, 454 F.3d 1063, 1068 (9th Cir. 2006) (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)). The ALJ has a duty to further develop the record where the evidence is ambiguous or the ALJ finds that the record is inadequate to allow for proper evaluation of the evidence. Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001); Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). A specific finding of ambiguity or inadequacy in the record is not required to trigger the necessity to further develop the record where the record itself establishes the ambiguity or inadequacy. McLeod v. Astrue, 640 F.3d 881, 885 (9th Cir. 2011).

2. Discussion

Defendant argues that it is Plaintiff's burden to prove disability and she has failed to do so, requesting the Court to affirm the opinion. However, this is not a case where there is no evidence of a severe impairment or where the ALJ has weighed conflicting opinions. Here, there is evidence that Plaintiff had severe degenerative joint disease requiring a hip replacement surgery. In finding Plaintiff was capable of medium work, the ALJ considered the following.

> The records from Ventura County Medical Center include an April 2019 CT scan of the abdomen and pelvis that did not reveal any acute gastrointestinal abnormalities. There was a small umbilical hernia and a lesion on the pancreas and further evaluation of the lesion was advised. There was severe degeneration in the right hip [AR 272-73]. The April 2019 x-rays of the chest showed only mild cardiomegaly [AR 275]. The April 2019 physical examination was within normal limits [AR 277]. In May, June, July, and August 2019, the physical and mental examination was within normal limits other than the claimant appeared somewhat frail and she alleged that she had anemia [AR 287, 307, 310, 359-60, 368, 379, 382, 385, 405, 412]. The June 2019 right hip x-rays revealed severe osteoarthritis [AR 318]. She reported increasing pain in the right hip and a physical examination showed difficulty with range of motion [AR 502]. The claimant underwent a right hip replacement in January 2020 without complication [AR 1-979, 1305]. Following surgery, the claimant underwent physical therapy. March 2020 x-rays of the right hip showed the implants in good position and a stable hip arthroplasty [AR 809, 812]. She had right leg swelling, but no pain with range of motion [AR 922]. A duplex ultrasound was negative for deep vein thrombosis. In April 2020, she reported her hip was improving and doing well [AR 542]. A July 2020 examination showed only a slight abductor lurch on the right and was otherwise normal [AR 971]. She was still smoking cigarettes. In January 2021, the claimant followed up with Dr. Thomas Wu regarding her right hip [AR 1335-39]. She reported that her right hip was doing much better, but she was still smoking one cigarette per day. A physical examination was normal and showed she had no limp walking. Xrays of the right hip showed the implants in good position with no evidence of loosening, or [osteolysis], or polyethylene height loss [AR 1335].

(AR 20.) The ALJ found that the longitudinal record supported an RFC for a full range of medium

work. (AR 21.)

Without a medical opinion to support the conclusion that Plaintiff was able to perform medium work, the ALJ's RFC lacks the support of substantial evidence. de Gutierrez v. Saul, No. 1:19-CV-00463-BAM, 2020 WL 5701019, at *6 (E.D. Cal. Sept. 24, 2020); see also Miller v. Astrue, 695 F. Supp. 2d 1042, 1048 (C.D. Cal. 2010) (it is improper for an ALJ to act as his own medical expert and substitute his medical opinion for the opinion of medical providers); Padilla v. Astrue, 541 F. Supp. 2d 1102, 1106 (C.D. Cal. 2008) ("as a lay person, an ALJ is 'simply not qualified to interpret raw medical data in functional terms.' ") (quoting Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir.1999)); Shipp v. Colvin, 2014 WL 4829035, at *7 (C.D. Cal. Sept. 26, 2014) ("Since. . .the record contains no assessment by a treating or examining doctor regarding the effect of plaintiff's physical impairments on her ability to function, it appears that the ALJ's physical residual functional capacity assessment was erroneously based solely on the ALJ's own, lay interpretation of plaintiff's testimony and other raw medical evidence in the record").

Here, the ALJ determined that Plaintiff had recovered from her hip surgery and had the capacity to do medium work by reviewing the subsequent medical record. However, the record itself shows that, while Plaintiff's x-rays revealed the implant was stable and properly aligned with no pain with range of motion (AR 809, 812, 922), Plaintiff continued to report pain (AR 955, 958, 974), and was taking narcotic medication (AR 958).  She was noted to have a positive abductor lurch and was prescribed outpatient physical therapy. (AR 955.)  She attended physical therapy on July 23, 2020, and reported difficulty lifting things up when squatting and rotating to her left side, and although she can climb stairs (AR 974), walking was limited by weakness and pain. (AR 974.) The record notes that Plaintiff presented with right lower extremity weakness, impaired range of motion, soft tissue restrictions, and impaired balance. (AR 975.)  These deficits were leading to a Trendelenburg gait pattern and decreased functional mobility. (AR 975.) Plaintiff's inconsistent home exercise program compliance and frequently shortened visits were leading to slower progression than anticipated. (AR 975.) Her ongoing strength, balance and stability/motor control impairments were leading to difficulty walking, riding her bike, and squatting down without hip pain, fear, and feelings of weakness.  (AR 975.)

Accordingly, the Court finds the ALJ erred in evaluating Plaintiff's RFC. This error is not harmless, and remand for further determination of Plaintiff's residual functional capacity following her hip replacement surgery is required.

### C. **Failure to Find Plaintiff's Disability Lasted 12 months**

Plaintiff argues that the ALJ erred by failing to treat the period from April 2019 to January 2021 as a closed period in which she was disabled. (Mot. 6-7.) Defendant responds that Plaintiff showed improvement as early as March 2020 and is not entitled to a closed period of disability. (Opp. 9.)

The Social Security regulations define disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). The agency has interpreted this to mean the "inability" to engage in substantial gainful activity has a "12 month" durational requirement which means the "inability" must last or be expected to last at least 12 months. Barnhart v. Walton ("Walton"), 535 U.S. 212, 214 (2002). In a case where the "inability" did not last 12 months it is automatically assumed that the claimant failed to meet the duration requirement and they "will not look back to decide hypothetically whether, despite the claimant's actual return to work before 12 months expired, the 'inability' nonetheless might have been expected to last that long. Walton, 535 U.S. at 214-15. "At all times, the burden is on the claimant to establish her entitlement to disability insurance benefits." Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998), as amended (Jan. 26, 1999); see also Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005) (initial burden of proving disability is on claimant).

Upon remand, the ALJ shall consider whether Plaintiff's alleged disability, including the recovery from hip surgery, continued for a period of 12 months.

## V.

## CONCLUSION AND ORDER

In conclusion, the Court finds that the ALJ's determination that Plaintiff had the residual functional capacity to perform a medium range of work is not supported by substantial evidence in

17

the record. Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is GRANTED and this matter is remanded back to the Commissioner of Social Security for further proceedings consistent with this order. It is FURTHER ORDERED that judgment be entered in favor of Plaintiff Pamala Leadbetter Dean and against Defendant Commissioner of Social Security. The Clerk of the Court is directed to CLOSE this matter.

IT IS SO ORDERED.

Dated:     **February 28, 2024**

UNITED STATES MAGISTRATE JUDGE